IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James R. Dator, #129074, | ) | C/A No.: 1:15-1698-MBS-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Warden Joseph McFadden, Lieber | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

James R. Dator ("Petitioner") is an inmate at the Lieber Correctional Institution ("Lieber") of the South Carolina Department of Corrections ("SCDC") who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment and return. [ECF Nos. 18, 19]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by October 19, 2015. [ECF No. 20]. After obtaining several extensions [ECF Nos. 23, 26, and 29], Petitioner failed to file a response, and the court issued an order on January 5, 2016, directing Petitioner to advise the court whether he wished to continue with his case and to file a response to Respondent's motion by January 19, 2016. [ECF No. 31]. Petitioner filed a response on January 7, 2016. [ECF No. 34].

Separately, Petitioner filed a motion to amend/correct his habeas petition on November 20, 2015 [ECF No. 25], which Respondent opposed [ECF No. 39], and to which Petitioner filed a reply [ECF No. 43]. Petitioner also filed a motion for an evidentiary hearing. [ECF No. 44].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Petitioner's motion to amend be denied as futile, Petitioner's motion for an evidentiary hearing be denied as unnecessary, and Respondent's motion for summary judgment be granted.

I.    Factual and Procedural Background

Petitioner was indicted at the April 2003 term of the Charleston County grand jury for burglary first degree ("Burglary 1st") (2003-GS-10-2643) [ECF No. 19-2 at 373–74] and two counts of assault and battery of a high and aggravated nature ("ABHAN") (2003-GS-10-2640 & -2641) [ECF No. 19-2 at 369–72]. Petitioner was represented by S. Boyd Young, Esq., and Daniel Prenner, Esq., at a jury trial before the Honorable Diane S. Goodstein, Circuit Court Judge, on March 15–22, 2004. [ECF No. 19-1 at 3 *et seq.*]. Petitioner's prior convictions in Charleston County for burglaries in 1981 and 1997 were admitted at trial to prove an element of Burglary 1st. [ECF No. 19-2 at 99–104]; *see* S.C. Code Ann. § 16-11-311; *State v. Simmons*, 573 S.E.2d 856 (S.C. Ct. App. 2002); *State v. Cheatam*, 561 S.E.2d 618 (S.C. Ct. App. 2002). Petitioner was found guilty, and Judge Goodstein sentenced him to life without parole ("LWOP") for Burglary 1st and ten years on each ABHAN count to run concurrently with one another, but consecutive to the Burglary 1st sentence. [ECF No. 19-2 at 365–66 (transcript); 375–77 (sentencing sheets)].

At trial, the state presented evidence that on the night of November 11, 2002, Petitioner assaulted Betty and Roy House (the "Victims") with a pistol and burglarized their home in North Charleston, South Carolina. The Victims were in their 70s at the time. The Victims separately identified Petitioner at trial and from a photo lineup after the burglary, when they noticed a small white or beige pickup truck partially parked in their yard that sold meat door to door. Independently, police had obtained the license plate of the pickup truck earlier that day from a disturbance complaint placed by Mr. Wahiti, the operator of a nearby convenience store, about Petitioner. Mr. Wahiti identified Petitioner as a regular customer of the store. On the day of the burglary, a customer reported to Mr. Wahiti that Petitioner was attempting to sell a television from the back of his pickup truck and was "acting like he was not normal person" when no one would purchase the television. When Mr. Wahiti asked Petitioner to leave the store, Petitioner threw a snack cake at him, and Mr. Wahiti had to run him out of the store.

The next day, the Victims were driving when they identified the pickup truck that had been parked in their yard during the burglary, and they took down the truck's license plate number. Police noted the license plate number matched that of the truck at Mr. Wahiti's convenience store earlier the same night as the burglary and determined it belonged to East Bay Gourmet, which sells seafood door to door. The company determined the truck was operated by Petitioner in Charleston on the day of the burglary and that he wore similar clothing as that described by the Victims. One of the company's employees, Chris Scott, also testified that Petitioner called him the day after the burglary, and Scott pressed star [*] 69 on his phone and saw that Petitioner was calling from North Charleston.

3

Petitioner's half-sister, Linda Spencer, also testified at trial. Ms. Spencer testified Petitioner had a romantic relationship with her daughter ("Niece"), with whom he had fathered a child. Ms. Spencer testified that, after Petitioner was arrested, she found letters in Niece's truck from the Charleston County Jail written in Petitioner's handwriting. Ms. Spencer testified the letters contained instructions and a script from Petitioner to have Niece and others to provide him with a false alibi for the night of the burglary. Ms. Spencer provided the letters to the Solicitor's Office, which introduced them at trial.

One of Petitioner's false alibi witnesses was Theresa James, who testified Petitioner was not at her residence in Lexington, South Carolina, with her on the night of the burglary. She testified that Niece tried to persuade her to lie for Petitioner and say that he was at James's home the night of the burglary. James testified Niece showed her a letter Petitioner had written and the information about which she was supposed to testify, but James said she would not lie. James testified Niece also informed her of what to say before she met with Petitioner's attorney.

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals") by way of an *Anders* brief.[1] [ECF No. 19-6]. On appeal, Petitioner was represented by Tara S. Taggart, Esq., of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. In the *Anders* brief, Petitioner raised the

---

[1] *Anders v. California*, 386 U.S. 738, 744 (1967), requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.

following issue to the Court of Appeals: "Whether the photographic line-up was unduly suggestive and conducive to irreparable mistaken identification?" *Id.* at 4. Attorney Taggart certified to the Court of Appeals the appeal was without merit and asked to withdraw as appellate counsel. *Id.* at 7. Petitioner filed a 50-page *pro se* response raising the following six issues:

(1) Did the trial court err in admitting evidence founded upon the likelihood of irreparable / inevitable misidentification?
(2) Did the trial judge err by not excluding or limiting the introduction of irrelevant evidence based upon immoral "bad acts"?
(3) Did the trial judge err by allowing the State to attack a potential alibi defense in its case in chief?
(4) Did the trial judge err by allowing the State to comment upon the defendant's failure to produce other witnesses?
(5) Did the trial judge err by admitting testimonial facts "bad act" evidence under the "motive," "common scheme or plan" exceptions of Rule 404(b), SCRE and *State v. Lyle*?
(6) Did the trial judge err in admitting "improper, prejudicial testimonial hearsay" and was the appellant's trial so infected with cumulative error as to warrant a reversal of his conviction and sentence?

ECF No. 19-7 at 5.

On June 5, 2007, the Court of Appeals filed an unpublished decision dismissing the appeal. [ECF No. 19-8]. Petitioner filed a pro se petition for writ of certiorari to the South Carolina Supreme Court on or about September 24, 2007 [ECF No. 19-9], raising the following issues:

(1) Did the court of appeals err in dismissing petitioner's direct appeal whereas evidence was admitted at trial founded upon the likelihood of irreparable identification? (pgs. 4–18)
(2) Did the court of appeals err by dismissing the petitioner's direct appeal whereas the trial Judge did not exclude or limit the introduction of irrelevant evidence based upon immoral bad acts? (pgs. 19–20)
(3) Did the court of appeals err in dismissing the petitioner's direct appeal whereas the trial Judge permitted testimonial bad acts evidence in, under the "common

5

scheme or plan" exceptions of rule 404(b), SCRE and *State v. Lyle*? (pgs. 21–22)

(4) Did the court of appeals err by dismissing the petitioner's direct appeal whereas the trial Judge permitted impermissible hearsay testimony that violated the petitioner's right to confrontation? (pg. 23)

(5) Did the court of appeals err by dismissing the petitioner's direct appeal whereas the trial judge permitted the State to attack the petitioner's alibi defense before it was mentioned to the jury? (pg. 24)

(6) Did the court of appeals err by dismissing the petitioner's direct appeal whereas the State was permitted to comment on the petitioner's failure to produce other witnesses? (pg. 25).

*Id.* at 4. The South Carolina Supreme Court denied certiorari in an order filed April 3, 2008. [ECF No. 19-10]. The remittitur was issued on April 22, 2008. [ECF No. 19-11].

On June 30, 2008, Petitioner filed an application for post-conviction relief ("PCR"), raising claims of ineffective assistance of trial and appellate counsel and prosecutorial misconduct. [ECF No 19-2 at 385–402].

On November 18, 2009, a PCR evidentiary hearing was held before the Honorable Kristi L. Harrington, Circuit Court Judge, at which Petitioner and his counsel, Ellen Babb, Esq., appeared. [ECF Nos. 19-2 at 410–502; 19-3 at 1–80]. On December 14, 2009, Judge Harrington filed an order of dismissal. [ECF No. 19-3 at 81–91].

Petitioner appealed from the denial of PCR and was represented by Appellate Defender Robert M. Pachak, Esq., of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. [ECF No. 19-12]. Attorney Pachak filed a petition for writ of certiorari in the South Carolina Supreme Court on or about July 6, 2010, raising the following issue: "Whether defense counsel was ineffective in allowing State's witness, Theresa James, to testify by telephone when it denied petitioner the right to confrontation?" *Id.* at 2.

The South Carolina Supreme Court transferred the appeal to the Court of Appeals, which granted the petition on September 20, 2012, and ordered briefing. [ECF No. 19-14]. After briefing [ECF Nos. 19-15 through 19-18], the Court of Appeals affirmed the denial of PCR in an unpublished opinion on April 3, 2013 [ECF No. 19-19]. Petitioner filed a Petition for Rehearing, which was denied by the Court of Appeals on May 24, 2013. [ECF No. 19-17 at 3]. On July 24, 2014, the South Carolina Supreme Court denied Petitioner's request for a writ of certiorari [ECF No. 19-17]. [ECF No. 19-19]. The remittitur was issued on July 30, 2014. [ECF No. 19-20].

Petitioner filed a state habeas action dated March 9, 2015, in the original jurisdiction of the South Carolina Supreme Court. [ECF No. 19-21]. On April 23, 2015, the South Carolina Supreme Court dismissed the state habeas petition. [ECF No. 19-22].

Petitioner filed this petition for a writ of habeas corpus on April 14, 2015.[2] [ECF No. 1].

II.    Discussion

A.    Federal Habeas Issues

Petitioner asserts he is entitled to a writ of habeas corpus on the following grounds:

**Ground I:**    The photo lineup was unduly suggestive/conducive to irreparable identification thus the identification is unreliable.
Supporting facts:
1) Seven photos of defendant shown to victims verses one photograph of the fillers.

_____

[2] The court received the petition on April 17, 2015, and docketed it on April 20, 2015. [ECF No. 1]. Because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The date stamp on the envelope containing the petition reflects April 14, 2015, as the date the Lieber mailroom received the envelope. [ECF No. 1-2 at 1].

2) Defendant name and booking number on photo lineup that corresponds under D. Photo.
3) Photo lineup shown to victims simultaneously;
4) Only side view photo line of defendant shown to victims;
5) Larger pic of defendant shown to victims than the other male fillers;
6) Victims were exposed to identifying info before being exposed to photo line-up.

**Ground II:**    Judge erred by allowing the introduction of irrelevant evidence based upon immoral bad acts.

Supporting facts: Judge allowed State witness Linda Spencer to testify that defendant had an affair with his niece which resulted of a child being born was highly prejudicial and an attack of character.

**Ground III:**    The trial court erred by allowing the state to comment on the petitioner's failure to produce other witnesses.

Supporting facts: Defense argued that state should not be allowed to comment on Susan Spencer or Johnny James not being at trial to testify.

**Ground IV:**    Judge erred by allowing impermissible hearsay testimony that violated petitioner's right to confrontation.

Supporting facts: The State got a uncorroborated description given off of a CAD 9-1-1 report operations report by Tonya Millette that bolstered a part of the victim's description.

[ECF No. 1 at 5–10].

**Ground V:**    Defense counsel was ineffective in allowing State witness Theresa James to testify by telephone where it denied Petitioner the right to confrontation.

Supporting facts: Trial counsel provided deficient representation when, without objection under the Confrontation Clause of the Sixth Amendment, counsel allowed the State to facilitate the testimony of witness Theresa James via telephone, with knowledge the witness was not absent from South Carolina, as represented by the State, which denied Petitioner the opportunity to fully confront the witness before the jury.

[ECF No. 25 at 1].

8

In his Response, Petitioner "withdraws and abandons Grounds II, III and IV of the instant § 2254 petition as lacking appropriate merit, procedurally barred, or not being cognizable on federal habeas corpus review." [ECF No. 34 at 20]. Therefore, the only remaining claim from Petitioner's original petition is Ground I. To the extent that Petitioner seeks to add Ground V through his motion to amend the petition [ECF No. 25], the undersigned's analysis reveals that ground is procedurally barred.

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon

9

mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

      C.      Habeas Corpus Standard of Review

           1.      Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B)    (i) there is an absence of available State corrective process; or

        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

11

> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

> (c)　　An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in

---

[3] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)(internal citations omitted). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted." *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain

claims to the Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

14

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

        3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the state's courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 722, 750 (1991), or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir.), cert. denied, 555 U.S. 868 (2008). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

    D.      Analysis

        1.      Ground I is Procedurally-Barred

In Ground I, Petitioner argues the photo lineup was unduly suggestive such that it was unreliable.   In support, Petitioner argues: (1) that seven photos of him were shown to the Victims, as opposed to one photograph of the fillers; (2) that his name and booking number appears on the photo lineup; (3) that the photo lineup was shown to the Victims

simultaneously; (4) that a side-view photo was shown to the Victims; (5) that a larger picture of him was shown to the Victims than of the others; and (6) that the Victims were exposed to identifying information about him before being shown the photo lineup.

Respondent alleges Petitioner's Ground I is procedurally barred because Petitioner raised no objection to his identification when Mr. Wahiti and the Victims testified before the jury. [ECF No. 19-1 at 280–416]. Moreover, Petitioner did not object to the out-of-court or in-court identification of him during the testimony of Officer Lee, who showed the photos to the three witnesses. *Id.* at 416–35. The only objection to the lineup was during a pre-trial, *Biggers* hearing. *Id.* at 280–301.

As a result of Petitioner's failure to object during trial to any identifications of him from the photo lineups, Ground I was procedurally defaulted at trial and was not preserved for appellate review. *State v. Aldret*, 509 S.E.2d 811 (S.C. 1999) (holding appellant's objection at trial must be contemporaneous to the introduction of the objectionable evidence to preserve a trial error for appellate review); *State v. Floyd*, 369 S.E.2d 842 (S.C. 1988)(holding *motion in limine* is not the ultimate disposition on the admissibility of evidence; the ruling remains subject to change based upon developments during trial); *Samples v. Mitchell*, 495 S.E.2d 213 (S.C. Ct. App. 1997) (holding that because a ruling on a *motion in limine* is not final and remains subject to change based on developments at trial, a contemporaneous objection must be made when the evidence is presented at trial); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (failure to preserve issue under state law results in procedural bar on federal habeas review).

2.     Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of Ground I. In all cases in which a state prisoner has defaulted his federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *See* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) (holding that neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (holding that "prejudice" requires a petitioner to show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Murray*, 477 U.S. at 496; *Rodriguez*, 906 F.2d at 1159 (holding that a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or the defendant's efforts to comply with the State's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on Ground I. Petitioner had a trial, a direct appeal, a PCR hearing, and a PCR appeal in which to raise Ground I. However, he failed to raise it, raise it properly, or preserve the issue for habeas review. Petitioner cannot establish cause and prejudice because he has abandoned the opportunities to preserve this issue.

In the alternative, Petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During Petitioner's trial, the solicitor presented the facts recited in the Factual Background section above. The record makes an assertion of actual innocence not credible. The undersigned finds Petitioner has failed to meet his burden of demonstrating actual innocence, and therefore, a procedural bar applies to Ground I.

E.    Motion to Amend to Add Ground V

In his motion, Petitioner seeks to add his claim in Ground V that trial counsel was ineffective in allowing James to testify by telephone because he argues it denied his right to confrontation. Respondent opposes the motion to amend on the grounds that it would be futile, as it is barred by the AEDPA statute of limitations. Petitioner's convictions and sentences were final on April 3, 2008, when the South Carolina Supreme Court denied certiorari in his direct appeal.[4] Petitioner had until July 2, 2008—i.e., 90 days—to petition

---

[4] There remains a dispute among the District of South Carolina opinions concerning whether (1) the decision date, (2) the remittitur date, or (3) the date of receipt of the remittitur controls for purposes of calculating the statute of limitations. *See, e.g.*, *Smith v. Warden, Lieber Corr. Inst.*, No. 4:13-3090-BHH, 2014 WL 5503529, at *6 (D.S.C. Oct.

the United States Supreme Court for certiorari. The AEDPA one-year statute of limitations

would have begun to run on July 2, 2008; however, Petitioner filed his state PCR action on

June 30, 2008. The PCR action tolled the AEDPA statute of limitations, with no untolled

time having expired. The PCR action remained pending until it was dismissed by the South

Carolina Supreme Court on July 24, 2014, when it denied certiorari. The AEDPA statute of

---

30, 2014) ("The [PCR] appeal was denied by the South Carolina Supreme Court on April 17, 2013, at which time the statute of limitations resumed."); *Lewis v. Cartledge*, No. 1:12-2584-SB, 2014 WL 517469, at *2 (D.S.C. Feb. 6, 2014) ("The statute remained tolled until the South Carolina Supreme Court denied certiorari [in Petitioner's PCR appeal] on June 12, 2008. On [date], the statute began to run again . . . ."); *Ramirez v. Rawski*, No. 1:13-cv-00200-JMC, 2013 WL 5657655, at *7 (D.S.C. Oct. 15, 2013) ("The statute of limitations remained tolled until the South Carolina Supreme Court denied certiorari on January 12, 2012.") (citing *Gonzalez*); *Goodman v. McCabe*, No. 1:13-cv-594-RMG, 2013 WL 5530522, at *2 (D.S.C. Oct. 7, 2013) ("[T]he Court agrees with the Magistrate Judge's thorough analysis regarding the application of AEDPA's statute of limitations to the facts of this case and agrees that it operates to bar this action."), *adopting in part* No. 1:13-594-RMG-SVH, 2013 WL 5530520, at *3–6 (D.S.C. Sept. 6, 2013) ("The statute of limitations remained tolled until the South Carolina Supreme Court denied certiorari on August 5, 2010."); *cf. Johnson v. Warden, Lee Corr. Inst.*, No. 2:14-cv-0768 DCN, 2015 WL 1021115, at *9 (D.S.C. Mar. 9, 2015) ("The statute of limitations remained tolled during the pendency of the PCR action which began on April 13, 2009, and lasted until the Remittitur for the PCR Appeal was issued on June 20, 2013."); *Byers v. Warden of McCormick Corr. Inst.*, No. 8:14-cv-0969 DCN, 2015 WL 846544, at *8 (D.S.C. Feb. 26, 2015) (using date remittitur was issued); *Brannon v. Stevenson*, No. 9:13-cv-1792-RMG, 2014 WL 4954884, at *14 (D.S.C. Sept. 29, 2014) (using the date the remittitur was issued "out of an abundance of caution and in light of Petitioner's *pro se* status, and in order to allow for a more thorough analysis of Petitioner's claims"); *Bradshaw v. McCall*, No. 0:12-cv-03624-DCN, 2014 WL 463142, at *7 n.3 (D.S.C. Feb. 4, 2014) (using the date the remittitur was issued "out of an abundance of caution" but recognizing "that case law may support the assertion that [ ] a state PCR action is no longer pending for purposes of § 2244(d)(2) once a state appellate court has denied relief"); *Atchison v. Warden of Broad River Corr. Inst.*, No. 9:10-2059-SB-BM, 2011 WL 2728469, at *3 n.7 (D.S.C. May 26, 2011) (using date remittitur was issued); *Beatty v. Rawski*, No. 1:13-3045-MGL-SVH, 2015 WL 1518083, at *2–6 (D.S.C. Mar. 31, 2015)(rejecting use of decision date in the report and recommendation and holding the date the remittitur was filed in circuit court for purposes of calculating the statute of limitations); *Beatty v. Rawski,* 1:13-3045-MGL-SVH (D.S.C. July 12, 2015) (denying Respondent's Fed. R. Civ. P. 59 motion).

limitations began to run the following day, on July 25, 2014. This federal habeas petition was filed on April 14, 2015, after the passage of 263 days. Petitioner had 102 days of untolled time remaining when he filed his original federal habeas petition including Grounds I, II, III, and IV.

1.     AEDPA Bar of Ground V

However, Ground V that Petitioner wishes to add by amendment is barred by the AEDPA one-year statute of limitations. *Duncan v. Walker*, 533 U.S. 167 (2001). As to any new grounds, the AEDPA clock expired on or about July 27, 2015, 102 days after Petitioner filed his original petition. Petitioner has offered no explanation in his habeas petition or motion to amend to explain why this ground is timely or why the statute of limitations should be equitably tolled.

Petitioner is barred from federal habeas review unless he has demonstrated that he diligently has been pursuing his rights and that extraordinary circumstances prevented his timely filing, which could equitably toll the statute of limitations.

2.     Petitioner Has Not Demonstrated Entitlement to Equitable Tolling

To benefit from the doctrine of equitable tolling, Petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland* at 659 (quoting *Pace*, 544 U.S. at 418); *see also Rouse*, 339 F.3d at 246 (holding that, for equitable tolling to apply, petitioner must show that there was 1) an "'extraordinary circumstance,' 2) beyond his control or external to his own conduct, 3) that prevented him from filing on time.").

a.    Petitioner Has Not Demonstrated Reasonable Diligence

The undersigned is of the opinion that Petitioner's untimely filing of Ground V should not be excused by equitable tolling under *Holland's* two-pronged test. First, Petitioner has not demonstrated he was reasonably diligent in pursuing his rights below. Petitioner's tardiness in filing this petition in no manner suggests that he diligently pursued his rights. *See also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.") (internal quotations omitted); *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) (rejecting equitable tolling where petitioner alleged lack of legal knowledge and legal resources), *cert. denied*, 540 U.S. 971 (2003); *see also Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (concluding equitable tolling applies only in rare instances where due to circumstances so external to the petitioner's own conduct, it would be unconscionable to enforce the limitation against the petitioner).

For these reasons, the undersigned is of the opinion that Petitioner has not satisfied the first-prong of *Holland's* two-pronged test for equitable tolling. *Holland* requires a petitioner to establish both prongs of the test to show entitlement to equitable tolling, so the court could end its analysis here.

b.    Petitioner Has Not Demonstrated Extraordinary Circumstance

Independently, the undersigned finds that Petitioner cannot satisfy the second prong of the test because he has not set forth facts that could demonstrate an "extraordinary circumstance" kept him from timely filing this action. Petitioner has not presented any


facts sufficient to permit a finding of an extraordinary circumstance that could entitle Petitioner to equitably toll the AEDPA's statute of limitations.

Accordingly, the undersigned is of the opinion that Ground V would be dismissed on statute-of-limitations grounds, if the court were to permit Petitioner to amend his petition. Having found that the statute of limitations would bar Petitioner's Ground V arguments, the undersigned is precluded from addressing the merits of those claims. *See Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995) (finding that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits). The undersigned recommends the court deny the motion to amend the petition to add Ground V on the grounds that it would be futile, as it is barred by the statute of limitations under AEDPA.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Petitioner's motion to amend [ECF No. 25] be denied as futile, Petitioner's motion for an evidentiary hearing [ECF No. 44] be denied as unnecessary, and Respondent's motion for summary judgment [ECF No. 18] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 28, 2016                                    Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

<div align="center">

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

</div>

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).